**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

EARNESTINE SAXTON WASHINGTON          CIVIL ACTION NO. 24-0799

VERSUS                                JUDGE S. MAURICE HICKS, JR.

CITY OF BOSSIER, ET AL.               MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss for Lack of Jurisdiction and a Motion to Dismiss for Failure to State a Claim by Defendants City of Bossier (the "City"), Jail of Bossier City (the "Jail"), Daniel Haugen ("Chief Haugen"), Police Department of Bossier City ("BCPD"), and Jane and John Does (collectively, "Defendants"). See Record Document 50. Plaintiff Earnestine Saxton Washington ("Washington") opposed. See Record Document 52. Defendants replied. See Record Document 53. For the reasons stated below, Defendants' Motion to Dismiss for Lack of Jurisdiction (Record Document 50) is **DENIED**. Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is **GRANTED**. All claims asserted by Washington against Defendants are **DISMISSED WITH PREJUDICE**. Washington's requests for amendment, and in the alternative, a continuance, are both **DENIED**.

**BACKGROUND**

On June 12, 2023, an unnamed Bossier City police officer initiated a traffic stop on Antonio Saxton ("Saxton"), the decedent. See Record Document 50-1 at 7 (citing Record Document 49 at ¶ 20). Saxton was arrested based on an alleged outstanding warrant and taken to the Jail. See id. (citing Record Document 49 at ¶ 25). Less than a day later,

Saxton was found unresponsive and pronounced deceased. <u>See id.</u> (citing Record Document 49 at ¶ 42). The coroner ruled his death a suicide by hanging. <u>See id.</u> (citing Record Document 49 at ¶ 50). In her Third Amended Complaint[1], Washington, Saxton's mother and alleged succession representative, asserts seven causes of action: (1) §1983 Violation of Due Process and Cruel and Unusual Punishment; (2) <u>Monell</u> claim; (3) Negligent Training, Supervision, and Retention; (4) Negligence; (5) Wrongful Death; (6) Survival Action; and (7) Civil Conspiracy. <u>See</u> Record Document 49 at ¶¶ 62–102.

## LAW AND ANALYSIS

### I. Pleading and Dismissal Standards.

Federal Rule of Civil Procedure 8(a)(2) governs the requirements for pleadings that state a claim for relief and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555, 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

---

[1] The Court notes that Washington has previously amended her Original Complaint three times; however, one of those amendments was stricken. <u>See</u> Record Document 30. Therefore, the Court will refer to her most recently amended complaint as her Third Amended Complaint.

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion. See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

## II. Standing.

"To establish Article III standing, a plaintiff must prove three elements: injury in fact, traceability, and redressability." Fletcher v. Whittington, No. 18-1153, 2022 WL 732076, at *2 (W.D. La. Mar. 10, 2022). See Lujan Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992). "Courts have also set forth 'other "standing" requirements that plaintiffs must satisfy under certain conditions, beyond those imposed by Article III.'" Id. (quoting Abraugh v. Altimus, 26 F. 4th 298 (5th Cir. 2022)). For example, "standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which 'provides that state common law is used to fill the gaps in administration of civil rights suits.'" Id. (quoting Pluet v. Fraiser, 355 F. 3d 381, 383 (5th Cir. 2004)). Therefore, "'a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.'" Id.

Under Louisiana law, "'the right to pursue a survival or wrongful death action is available to four exclusive categories of survivors'":

> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouses or child surviving,
>
> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
>
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

Id. (quoting Abraugh, 26 F. 4th at 298, citing LA. CIV. CODE arts. 2315.1(A) & 2315.2(A)). Louisiana law is "'clear that the existence of a higher class of survivors prevents a person in a lower class from filing suit.'" Id. In Abraugh, the Fifth Circuit explained that "a plaintiff's inability to sue under Louisiana law because of the exclusive categories set forth in the survival and wrongful death statutes is a defect of 'standing.'" Id. (citing Abraugh, 26 F. 4th at 298). "However, 'it is a defect of prudential standing, not Article III standing.'" Id. This is an important distinction because "'Article III standing is the only kind of standing required before a federal district court can exercise subject matter jurisdiction.'" Id.

### III. Summary of the Arguments.

Defendants assert several arguments in their Motions to Dismiss. First, they argue Washington has not established she has standing to bring this action in a representative capacity. See Record Document 50-1 at 10. They submit that her Third Amended Complaint is devoid of basic details about Saxton's succession proceeding. See id. at 11. Defendants contend that even if Washington had been judicially appointed as the representative of Saxton's succession before filing suit, she would not have standing to

bring wrongful death claims in a representative capacity. <u>See id.</u> Defendants advance that her status as Saxton's mother gives her the exclusive right to bring a survival action in her individual capacity; thus, she does not have standing to bring this suit in any representative capacity. <u>See id.</u>

Next, Defendants aver that BCPD is not a juridical entity capable of being sued; therefore, all of Washington's claims against it should be dismissed. <u>See id.</u> at 12. Defendants also assert that the fictitious John and Jane Does are improperly named, and her claims against them are frivolous and should be dismissed. <u>See id.</u> Additionally, they argue Saxton died in pretrial detention, so Washington's § 1983 Eighth Amendment claim is inapplicable and should be dismissed. <u>See id.</u> at 13. Defendants advance that Washington fails to allege deliberate indifference under her § 1983 Fourteenth Amendment claim. <u>See id.</u> They contend that she has not alleged a single fact permitting the plausible inference that any of the City's officials had the slightest reason to suspect Saxon was a suicide risk. <u>See id.</u> at 14.

Furthermore, Defendants aver that the City's officers and employees are entitled to qualified immunity on claims where they have been sued in their individual capacities. <u>See id.</u> at 15–16. Defendants continue and argue that Washington has not adequately alleged <u>Monell</u> liability against the City. <u>See id.</u> at 16. They assert that she has failed to state facts permitting a plausible inference that the City maintained an official, written policy that caused Saxton's rights to be violated. <u>See id.</u> at 17. Moreover, Defendants advance that Washington's general allegation that the City maintained a custom of failing to adequately ensure the safety of detainees is insufficient. <u>See id.</u> at 18. Defendants also

contend that Washington does not sufficiently plead knowledge of a policymaker, which is required when pleading a <u>Monell</u> claim. <u>See id.</u>

Next, Defendants address Washington's failure to train, supervise, and retain claim against Chief Haugen. <u>See id.</u> at 19. They assert that Chief Haugen was not directly involved with Saxton's arrest or confinement, and he is not the final policymaker for the City. <u>See id.</u> Regardless, Defendants submit Chief Haugen is entitled to qualified immunity. <u>See id.</u> Additionally, Defendants address Washington's negligence claim listed under count four. <u>See id.</u> at 20. To the extent she is raising a federal law claim, Defendants advance that negligence is not actionable because deliberate indifference is required. <u>See id.</u> To the extent she is raising a Louisiana negligence claim, they argue this claim should be dismissed for the same reasons supporting dismissal of her federal constitutional claims. <u>See id.</u>

Finally, Defendants address Washington's civil conspiracy claim. <u>See id.</u> at 22. They argue the individual unnamed John and Jane Does are all members of BCPD or the Jail; thus, they are part of one entity that cannot conspire with itself. <u>See id.</u> Defendants are unsure whether her conspiracy claim is based on federal law, state law, or both; nevertheless, they aver that she has no claim for civil conspiracy, which is not independently actionable. <u>See id.</u>

Washington opposes, stating that she has proper standing to bring this action as Saxon's mother. <u>See</u> Record Document 52-1 at 5. She concedes that BCPD is not a legal entity capable of being sued, and any mention of BCPD was an "oversight." <u>See id.</u> at 6. Washington contends that she should be afforded an opportunity to conduct limited discovery to identify the unknown John and Jane Does. <u>See id.</u> She also argues she can

plead facts to sufficiently allege her Eighth Amendment claim, and courts should apply the same deliberate indifference standard to medical claims by pretrial detainees and convicted inmates. See id. at 6, 7. Moreover, Washington claims there is some ambiguity surround Saxton's status because he was serving a short sentence based on being convicted for previously filing to appear in court. See id. at 7.

Washington also asserts she can plead facts to sufficiently allege her Fourteenth Amendment claims. See id. She advances that "it is heavily implied in the alleged facts that the Bossier Defendants[] acted with the requisite deliberate indifference needed to satisfy the burden for a Fourteenth Amendment claim." Id. She avers that Defendants are not entitled to qualified immunity because she has viable Eighth and Fourteenth Amendment claims. See id.

As to her Monell claim, Washington maintains she has "set forth facts that refer to Defendants having an established policy and/or custom and even alleges who the policy maker is." Id. at 8. While she admits that she has not specified a specific policy or custom, she claims "that is because the information is not yet available to [her] and requires discovery." Id. With respect to her negligence claims under both state and federal law, Washington contends she has "pled facts that alluded to Defendant's deliberate indifference and should an amendment be allowed, [she] can plead with more specificity as to the deliberate indifference to support her claim." Id. at 8–9. Washington concedes her negligence claim against the City, however. See id. at 9. At the end of her opposition, she requests an opportunity to amend, or alternatively, for a continuance to conduct discovery. See id. She believes Defendants' arguments are too premature, and discovery would cure most of the alleged deficiencies. See id.

Defendants reply, reiterating the following: Washington has failed to plead deliberate indifference; her Third Amended Complaint rests on conclusory allegations; she improperly named BCPD and John and Jane Does; and she has no standing to sue in a representative capacity. See Record Document 53 at 1. Defendants maintain that Washington's inability to plead a constitutional right violation also resolves the City officers' qualified immunity defense, her Monell claim, and her state law claims. See id. at 3. Additionally, Defendants argue the Court should decline her request to amend her complaint. See id. at 4. They advance that Washington offers no details as to how she can amend her complaint to cure the alleged defects. See id. Moreover, Defendants point out that she has previously amended her complaint three times. See id. at 5; see also Record Documents 30, 45, & 49.

## IV. Analysis.

As a threshold matter, the Court will first address whether Washington has standing, as that can affect subject matter jurisdiction. If Washington has standing, the Court will then address each claim alleged in her Third Amended Complaint.

### (a) Standing.

Washington claims she is bringing this suit "individually and on behalf of all heirs-at-law and wrongful death beneficiaries of [] Saxton…, the mother of Decedent and the succession representative of the Succession of Antonio Saxton is a resident of Bossier City, Louisiana." Record Document 49 at ¶ 1. Washington provides no further factual support demonstrating she is the succession representative of Saxton's succession. In her opposition, she does not assert any argument clarifying or proving she is the

succession representative; instead, she submits she has standing as Saxton's mother. See Record Document 52-1 at 5–6. She has not alleged enough facts to demonstrate she is his succession representative.

While Washington does not have prudential standing as a succession representative, she has superior status as Saxton's mother under Louisiana law. See Fletcher, 2022 WL 732076, at *3. From the facts, Saxton does not appear to have any children or a spouse; therefore, Washington, as his mother, can pursue a survival and wrongful death action under Articles 2315.1 and 2315.2. Thus, Defendants Motion to Dismiss for Lack of Jurisdiction (Record Document 50) is **DENIED**.

(b) Claims Against BCPD.

In her opposition, Washington concedes that BCPD "is not a legal entity capable of being sued and any mention of BCPD in the [Third] Amended Complaint was an oversight." Record Document 52-1 at 6. Since it is undisputed that BCPD is not a proper party to this litigation, Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50), with respect to all claims against BCPD, is **GRANTED**. All of Washington's claims asserted against BCPD are **DISMISSED WITH PREJUDICE**.

(c) Count 1: Violation of Due Process and Cruel and Unusual Punishment under § 1983.

Washington asserts count one against all Defendants. See Record Document 49 at ¶ 63. She claims that Defendants violated Saxon's "due process rights and/or inflicted cruel and unusual punishment" as follows:

> a. Failed to property protect and monitor Mr. Saxton from life threatening harm;

b. Failed to conduct security checks or rounds within a reasonable timeframe;

c. Failed to properly assign Mr. Saxton to a dormitory that was free from external hazards;

d. Failed to prevent and/or stop Mr. Saxton from enduring life-threatening harm; and

e. Failed to properly search for and remove dangerous items or objects which posed a risk of harm from Mr. Saxton's possession.

Id. Washington alleges that "[t]hese deliberate acts and/or omissions violated Mr. Saxton's constitutional rights under the 8th and 14th Amendments of the U.S. Constitution, as well as violated his due process rights to be free from cruel and unusual punishment." Id. at ¶ 64. She submits that "[a]s a result of each Defendant's conduct and/or inaction, Mr. Saxton endured pain, suffering, fear, serious injuries, loss of enjoyment of life, and a wrongful death." Id. at ¶ 65.

The Fifth Circuit acknowledges that a different analysis applies depending on whether the aggrieved party was a pretrial detainee or a convicted prisoner. See Nixon v. Dall. Cnty., Tex., No. 24-10082, 2025 WL 737338, at fn 2 (5th Cir. Mar. 7, 2025). "The Fourteenth Amendment's Due Process Clause provides pretrial detainees protections extending beyond those granted to sentenced defendants." Alexander v. Philip R. Taft Psy D and Assocs., P.L.L.C., 143 F. 4th 569, 579 (5th Cir. 2025). "While '[a] sentenced inmate … may be punished' within the strictures of the Eighth Amendment, '[d]ue process requires that a pretrial detainee not be punished.'" Id. "Pretrial detainees may bring claims of such violations 'either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission.'" Id.

10

The Court concludes that Saxton was a pretrial detainee because there are no sufficient facts showing he was a convicted prisoner. In fact, Washington admits Saxton was a detainee. <u>See</u> Record Document 49 at ¶ 85, 86, & 90. Furthermore, since her § 1983 claim arises out of the time Saxton was a pretrial detainee, the Court will evaluate his claim under the Fourteenth Amendment, not the Eight Amendment. <u>See</u> <u>Nixon</u>, 2025 WL 737338, at fn 2. Therefore, with respect to Washington's Eighth Amendment claims, Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is **GRANTED**. All of her Eighth Amendment claims are **DISMISSED WITH PREJUDICE**, as they are inapplicable to the instant case.

With respect to her § 1983 Fourteenth Amendment claim, the Court finds that Washington's allegations are legal conclusions that do not survive dismissal under Rule 12(b)(6). To succeed under § 1983, a plaintiff "must allege that the defendant violated a 'right secured by the Constitution and laws of the United States,' and [she] must show that 'a person acting under color of state law committed the alleged violation.'" <u>Hall v. Trochessett</u>, 105 F. 4th 335, 340 (5th Cir. 2024). "The statutory or constitutional deprivation must also be due to deliberate indifference and not merely negligent acts." <u>Id.</u>

Washington has failed to sufficiently allege Defendants violated a right secured by the Constitution and has failed to allege deliberate indifference. She simply lists five alleged failures and stated they amount to deliberate indifference. Merely stating Saxton's Fourteenth Amendment rights have been violated by these alleged failures is not enough to plead a plausible § 1983 claim. Furthermore, she does not connect any specific defendant to any of the alleged failures; rather, she groups them all together. Since Washington's allegations constitute insufficient legal conclusions, Defendants' Motion to

Dismiss for Failure to State a Claim is **GRANTED** with respect to her § 1983 Fourteenth Amendment claim. This claim is **DISMISSED WITH PREJUDICE**.

    (d) Count 2: Monell Claim.

    Washington asserts count two against Chief Haugen. <u>See</u> Record Document 49 at ¶ 68. She lists the following four alleged failures of Chief Haugen:

> 1. At all relevant times, Defendant Chief Haugen failed to implement, maintain, and/or enforce a custom, practice, and/or policy requiring security checks or rounds be conducted at the jail within a specific timeframe consistent with customary practices to secure the safety and well-being of its detainees.
>
> 2. At all relevant times, Defendant Chief Haugen failed to implement, maintain, and/or enforce a custom, practice, and/or policy requiring detainees be searched and striped of all contraband, weapons, or other hazardous items that may be used to cause harm to oneself or others.
>
> 3. At all relevant times, Defendant Chief Haugen failed to implement, maintain, and/or enforce a custom, practice, and/or policy requiring jail employees, including John and Jane Does, to enforce, practice, and abide by the requisite guidelines and/or procedures of the jail with respect to protecting and monitoring detainees' safety and preventing detainees from suffering harm.
>
> 4. At all relevant times, Defendant Chief Haugen failed to implement, maintain, and/or enforce a custom, practice, and/or policy requiring jail employees, including John and Jane Does be properly trained, supervised, and retained.

<u>Id.</u> at ¶¶ 68–71. Washington argues "[t]hese customs, practices, and/or policies, or the lack thereof, are by design indifferent to the constitutional rights of individuals like Mr. Saxton and consequently violated his rights and allowed the named Defendants to deprive him of his rights under State and Federal law." <u>Id.</u> at ¶ 72. She also alleges a

defendant was recklessly indifferent but failed to identify which specific defendant; however, given the fact that she is asserting her Monell claim against Chief Haugen, the Court concludes this unspecific defendant refers to Chief Haugen. See id. at ¶ 73.

"A suit against a government officer 'in his official capacity' is the same as a suit against the government entity of which he is an agent." Holmes v White, 718 F. Supp. 3d 585, 604 (E.D. La. 2024) (internal quotation marks omitted). There is no respondeat superior liability under § 1983; rather, municipalities are liable under § 1983 "'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may facilely be said to represent official policy, inflicts the injury....'" Id. (internal quotation marks omitted). Municipal liability under § 1983 requires three elements: "'(1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose "moving force" is that policy or custom.'" Id. A plaintiff seeking Monell liability "must 'identify a municipal policy or custom that caused [his] injury.'" Id. (internal quotation marks omitted). "'The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority.'" Id. (quoting Valle v. City of Hous., 613 F. 3d 536, 542 (5th Cir. 2010), citing Burge v. St. Tammany Parish, 336 F. 3d 363, 369 (5th Cir. 2003)).

In the instant case, the Court finds that Washington has failed to plead a plausible Monell claim. She has not sufficiently alleged the existence of a custom, practice, or policy at Bossier Max. Her four listed "failures" are not actual policies, regulations, or decisions that have been officially adopted and promulgated by lawmakers or others with authority. Holmes, 718 F. Supp. 3d at 604. Rather, these listed alleged failures are pure speculation,

13

and Washington does not provide any further factual support of their existence. Additionally, she has failed to sufficiently plead that these alleged polices, practices, or customs were the moving force behind a constitutional violation. Washington's claims that these customs, practices, and/or policies were designed to be indifferent to Saxton's constitutional rights is an unsupported legal conclusion. Furthermore, she has no additional support showing Chief Haugen acted with reckless indifference besides her speculative statement. Therefore, with respect to count two, Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is **GRANTED**. Her <u>Monell</u> claim is **DISMISSED WITH PREJUDICE**.

### (e) Count 3: Negligent Training, Supervision, and Retention.

Washington asserts count three against Chief Haugen. <u>See</u> Record Document 49 at ¶ 76. She claims Chief Haugen had the following three duties:

> 1. [A] duty to screen applicants for hire to work in the city's jail, monitor employees retention, and/or to discharge from its employ those employees who were unfit, not suitable, or improperly trained or instructed, constituted a potential menace, hazard, or danger to the public and detainees, those with vicious propensities, those with emotional, physical, psychological, biased, and/or physiological traits or characteristics unsuitable, unstable or contraindicated for such employment.

> 2. [A] duty to hire, train, and retain personnel within the jail and at the supervisory level and lower-ranked levels of employment so as to adequately discipline, supervise, and place into effect the appropriate rules applicable to the duties, behavior, and activities of their servants, agents, deputies, police officers, jail guards, jail employees, and/or personnel.

> 3. [A] duty to develop and implement appropriate rules and guidelines for which the Jail should abide by in ensuring the safety, security, and well-being of detainees while in the

> presence and custody of Defendants and their servants,
> agents, deputies, police officers, jail guards, jail employees,
> and/or personnel.

Id. at ¶¶ 76–78. Additionally, Washington asserts that Chief Haugen was negligent because he failed to properly train, supervise, and/or retain; failed to implement appropriate jail guidelines and regulations; failed to discharge employees unfit, unsuitable, improperly trained or instructed; and failed to properly screen employees for hire. See id. at ¶ 79. She advances that Defendants John and Jane Does "were improperly or inadequately trained, supervised, and/or retained by [] Chief Haugen." Id. at ¶ 80. As a result of Chief Haugen's alleged negligence, Washington maintains that "Saxton was unmonitored, not checked on, and left with dangerous items from which harm could be done to his person or others, ultimately leadings to his demise." Id. at ¶ 81.

Initially, the Court points out that Washington has not listed or cited to any state or federal law under count three. She fails to demonstrate the existence of these alleged duties under either federal or state law. Merely stating the existence of these duties, without more, is insufficient under Rule 12(b)(6). Thus, the Court finds that all of Washington's allegations under count three are unsupported legal conclusions.

"A court's review of a Rule 12(b)(6) motion to dismiss 'is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" Fucich Contracting, Inc. v. Shread-Kuyrkendall and Assocs., Inc., No. 18-2885, 2020 WL 1974248, at *6 (E.D. La. Apr. 24, 2020) (quoting Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F. 3d 383, 387 (5th Cir. 2010), citing Collins v. Morgan Stanley Dean

15

Witter, 224 F. 3d 496, 498–99 (5th Cir. 2000)). "A court may also take judicial notice of certain matters, including public records and government websites." Id. Here, the Court is only looking to Washington's Third Amended Complaint; therefore, the Court will not assume or conclude on which law applies to her allegations. It is not the duty of this Court to assume and make arguments on behalf of Washington.

Even if Washington had listed this claim under Louisiana law, which she did not, dismissal under Rule 12(b)(6) is still appropriate. Her allegations under count three are unsupported legal conclusions that fail to state a plausible claim for relief. She merely recites the elements for a negligent training, supervision, and retention claim. Without additional factual and legal support, her allegations are insufficient and subject to dismissal. Therefore, with respect to count three, Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is **GRANTED**. Washington's negligent training, supervision, and retention claim under count three is **DISMISSED WITH PREJUDICE**.

(f) Count 4: Negligence of the Individually Named Defendants.

Washington asserts count four against the individually named Defendants, which includes Chief Haugen and the John and Jane Does. See Record Document 49 at ¶ 84. She alleges that these Defendants "had a duty to protect Mr. Saxton, monitor Mr. Saxton, remove dangerous items from Mr. Saxton's person or presence, and regularly check on Mr. Sacon while being detained in jail." Id. Additionally, she claims these Defendants "had a duty to adhere to and implement Jail guidelines and regulations with respect to the safety, security, and well-being of detainees, including Mr. Saxton." Id. at ¶ 85.

16

Washington argues these Defendants were negligent for failing to provide for the safety and protection of Saxton; failing to conduct security checks (or rounds) in a timely manner; failing to adhere to or implement the jail's guidelines and regulations; failing to monitor detainees including Saxton; and failing to remove hazardous items or weapons from Saxton's person and/or holding cell. See id. at ¶ 86. As a result of their alleged negligence, Washington claims Saxton "was left unmonitored, with dangerous items, and his cell unchecked, ultimately leading to his demise." Id. at ¶ 87.

The Court finds that count four is subject to dismissal for the same reasons as count three. Washington fails to cite to any law or legal standards setting forth these alleged duties. She merely asserts Chief Haugen and the John and Jane Does were negligent for failing to comply with these two alleged duties. Her allegations contained within count four are unsupported legal conclusions. Washington's attempt to conclude that Defendants' failures constituted negligence is purely speculative and insufficient for Rule 12(b)(6) purposes. As previously stated, it is not the duty of this Court to look beyond her Third Amended Complaint. Washington has failed, for the third time, to adequately plead a plausible negligence claim against Chief Haugen and the John and Jane Does.

Even if Washington had listed this claim under Louisiana law, which she did not, dismissal under Rule 12(b)(6) is still appropriate. Her allegations under count four are unsupported legal conclusions that fail to state a plausible claim for relief. She merely recites the elements for a negligence claim. Without additional factual and legal support, her allegations are insufficient and subject to dismissal. Therefore, with respect to count four, Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is

**GRANTED**. Washington's negligence claim under count four is **DISMISSED WITH PREJUDICE**.

> (g) Counts 5 and 6: Wrongful Death Action and Survival Action under Louisiana Law.

Washington asserts count five against all Defendants. See Record Document 49 at ¶¶ 90–91. She claims that as a result of Defendants' "negligent acts of failing to regularly conduct security checks and/or establish a procedure for regularly conducting security checks (or rounds at the jail, to detect or remove common items known to pose a danger to detainees, such as shoestrings, and to monitor detainees and keep them safe from harm caused the wrongful death of [] Saxton." Id. at ¶ 90. Washington argues Defendants "are liable for the injuries, pecuniary losses, loss of enjoyment of life, conscious pain and suffering, companionship, loss of love, loss of society, and any and all other losses suffered by Mr. Saxon including his wrongful death." Id. at ¶ 91.

Washington asserts count 6 against all Defendants. She contends that Saxon "survived for at least some period of time while allegedly attempting to hang himself." Id. at ¶ 93. She alleges that "[t]he way and manner in which he allegedly hung himself was not an imminent death and caused him great pain and suffering." Id. at ¶ 94. Washington submits that "[a]ll of the suffering and damage caused by this incident and sustained by Mr. Saxon and the named Plaintiffs herein were directly caused by the negligent and willful acts or omissions of Defendants, in solido, thereby entitling Plaintiffs to an award of damages to be determined by a jury." Id. at ¶ 97.

This Court has previously concluded that Washington has failed to successfully plead a plausible negligence claim against any Defendant; therefore, she cannot receive

18

any of the requested relief under wrongful death and survival. Additionally, her claims within counts five and six are conclusory and insufficient. For example, under count six, Washington alleges Defendants engaged in negligence and willful acts or omissions. See id. Therefore, with respect to counts five and six, Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is **GRANTED**. Washington cannot claim any of the requested relief for wrongful death and survival.

(h) Count 7: Civil Conspiracy.

Washington asserts count seven against the unknown John and Jane Doe Defendants. See id. at ¶ 59. She alleges "Defendants discussed, agreed, and acted to wrongfully charge Mr. Saxon with second-degree aggravated battery and false imprisonment based on false allegations." Id. She maintains that "Defendants discussed, agreed, and acted to detain Mr. Saxton in Bossier City Jail and subject him to physical abuse and intentional neglect." Id. at ¶ 100. Washington claims that "[a]s a consequence of the Defendants' actions, Mr. Saxton was wrongly charged with crimes that he did not commit, and his HOME was wrongly searched." Id. at ¶ 101. She advances that "Defendants' conspiracy and overt actions caused the pain, suffering, and ultimate death of Mr. Saxton on June 13, 2023." Id. at ¶ 102.

Washington, again, fails to cite to any law or legal standard to support her civil conspiracy claim. She merely provides legal conclusions to support her claim, which is insufficient under Rule 12(b)(6). Even though it is not the duty of this Court to assume which law is applicable to count seven, the Court will analyze her civil conspiracy claim under federal law out of an abundance of caution.

The Fifth Circuit has held "that in order to prove the existence of a civil conspiracy under section 1983, a plaintiff must alleged facts that 'establish 1) the existence of a conspiracy involving state action' as well as '2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.'" Armstrong v. City of Shreveport, 532 F. Supp. 3d 341, 350–51 (W.D. La. 2021). Here, Washington's allegations lack specificity. Similar to the plaintiff in Armstrong, Washington's "recounting of the facts does not pinpoint who was chosen to commit the act…, who committed the act, or how that individual committed the act." Id. at 351. Other than her blanket statements that Defendants agreed to do something, there are no other facts to review which Defendant worked to wrongfully bring these alleged charged against Saxton. See id. As this Court concluded in Armstrong, "[t]hese 'threadbare assertions fall short of the well-pleaded facts' that would allow this Court to reasonably infer that [Defendants] conspired against [Saxton]." Id.

Even if Washington could sufficiently establish the existence of an agreement among Defendants, the intra-corporate conspiracy doctrine is detrimental to her civil conspiracy claim. Under this doctrine, "[w]hen all defendants are members of the same collective entity, the conspiracy cannot involve two or more people, meaning a conspiracy cannot be established at all." Id. "An entity cannot conspire with itself." Id. Here, Washington alleges that Jennifer Brown, Saxton's romantic partner, Brown's BCPD brother, and other unknown BCPD officers "conspired to wrongfully charge and detain" Saxton. Record Document 49 at ¶ 59.  Brown is not named as a Defendant in this litigation; therefore, the unknown John and Jane Doe Defendants refer to BCPD officers who allegedly conspired against Saxton. Because these Defendants are employees of a

single entity, BCPD, there can exist no conspiracy among them. See Armstrong, 532 F. Supp. 3d at 351. Therefore, with respect to count seven, Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is **GRANTED**. Washington's civil conspiracy claim is **DISMISSED WITH PREJUDICE**.

**V. Amendment.**

Throughout her opposition, Washington requests opportunity to amend her Third Amended Complaint. See Record Document 52-1. Alternatively, she requests a continuance to conduct discovery. See id. at 9. The Court finds further amendment and a continuance are both unnecessary and unwarranted.

"Under Federal Rule of Civil Procedure 15(a), a district court 'should freely give leave' to amend 'when justice so requires.'" Vuoncino v. Forterra, Inc., 140 F. 4th 200, 206 (5th Cir. 2025). "However, a district court's discretion is guided by five factors when determining whether to grant leave: '1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment.'" Id. at 206–07. Here, Washington has already amended her Original Complaint at least twice. See Record Documents 45 & 49. The Court finds any further amendment would be futile, and Washington has repeatedly failed to cure deficiencies by previous amendments. She has failed to offer specificity and support for her request to amend. Thus, her request to amend is a "bare bones request" that is futile, as it fails to apprise this Court of the facts she would plead in a Fourth Amended Complaint. See Peykoff v. Cawley, No. 24-10186, 2025 WL 1380070, at *8 (5th Cir. May 13, 2025). Therefore, Washington's request for leave to amend is **DENIED**.

With respect to Washington's request for a continuance to conduct discovery, she does not specify what should be continued. See Record Document 52-1 at 9. It appears she is requesting a continuance of ruling on Defendants' Motions to Dismiss; however, it is unclear. Even so, the Court finds a continuance is unnecessary, especially given the fact that Washington does not even specify what kind of discovery she wishes to conduct. Her blanket request for a continuance is improper and is **DENIED**.

## CONCLUSION

For the reasons stated above,

Defendants' Motion to Dismiss for Lack of Jurisdiction (Record Document 50) is **DENIED**. Defendants' Motion to Dismiss for Failure to State a Claim (Record Document 50) is **GRANTED**. All of Washington's claims are **DISMISSED WITH PREJUDICE**.

A Judgment accompanying this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25th day of August, 2025.

_____

UNITED STATES DISTRICT COURT JUDGE